## HUDMAN et al. v. HUELSTER.
### No. 2435.

Court of Civil Appeals of Texas. El Paso. May 29, 1930.

Mae M. Ament, of Alpine (John Perkins, of Alpine, of counsel), for appellants.

Hart Johnson, of Fort Stockton, for appellee.

WALTHALL, J.

This case presents a question of venue arising on a plea of privilege to be sued in the county of the residence of the parties defendant, appellants in this appeal. The suit is brought by S. W. Huelster against W. F. Hudman, W. F. Meriwether, and Homer Ferguson, alleging that plaintiff resides in Pecos county, and that each of defendants resides in Brewster county.

The petition alleges that plaintiff was the owner and in possession of two mules and one horse, and had them in a pasture in Pecos county; that defendants were engaged as partners in the business of furnishing labor and animals, such as mules and horses, for the construction of tanks, railroad road beds, roads, streets, highways, and other dirt work, and that on the day mentioned "they and each and all of them in person and through their agents and servants took from plaintiff's possession the said three animals, to-wit: one horse and two mules, above mentioned, and thereby, and in so doing, committed a trespass upon plaintiff's property and wrongfully deprived him of the possession and use of said animals, all to the use and benefit of defendants and each and all of them and against plaintiff's desires and wishes," causing plaintiff damage, for which plaintiff sues, stating his damages.

Defendants in due time, and in proper form, filed a plea of privilege to be sued in Brewster county, the place of their residence.

Plaintiff filed a controverting affidavit alleging the facts substantially as in his petition, alleges that defendants "converted them and especially one of the mules to their own use and benefit in Pecos County" and "committed a trespass upon plaintiff's property against the plaintiff, which, and all of which, caused plaintiff the damage for which he sues," etc.; that defendants and each of them did wrongfully take said animals from his possession, said animals being taken from said pasture in Pecos county in which plaintiff owned ten acres of land, where plaintiff lawfully had them, "all of which constitutes a trespass, which continues to this date, by reason of the fact that defendants still have the possession of one of said mules"; that this court has venue of this suit, because this is a suit based upon an offense and a trespass against plaintiff committed by defendants in Pecos county, Tex., as provided for in subdivision 9 of article 1995, Rev. St. 1925.

The court overruled the plea and defendants prosecute this appeal.

### Opinion.

The evidence taken on the hearing of the plea is substantially as follows: Mr. Huelster testified: He owned, and was in possession on October 15, 1928, of the two mules and the horse mentioned in the suit; he had them on the ten acres in that pasture known as the "Old Rooney Pasture"; he owns ten acres in there; that ten acres is not cut off from the rest of the pasture land, it is altogether; the pasture is in Pecos county; he looked for the mules and horse inside and outside of the pasture and could not find them; was told where they were; he went to where he was told they were and found one of the mules, did not see the other mule and horse; Hudman was working the mule he saw; later a boy brought one mule and the horse to him and said Hudman had sent them. Hudman said to him that he would try to find the other mule for him; he did not give Hudman or any one else permission to take them away from the pasture; saw one of the mules at Pyote, Hudman's men were working them; did not know of his personal knowledge who took them out of the pasture; did not know of his own personal knowledge whether or not Hudman had any right in that pasture.

Dick Davis testified: Lives in Fort Stockton; did no work for Hudman in October, 1928; removed some mules from the pasture in question; turned them over to another man he thinks was Dick Buford; some one wrote or phoned him to gather them; it might have been Dick Buford or Hudman, but

thinks Buford; the mules were taken out of the pasture and taken towards Monahans; did not know whose mules any of them were; learned that Hudman owned all of them but about two or three in the pasture; Huelster said he had some in there, but witness did not know the mules, and the other man did not either, and "we took all that were in there and we cut out two that we knew did not belong to Hudman." Mr. Reed (witness' partner) made the deal for the Hudman mules and horses to be in the pasture; Hudman was one of the men who had them put in the pasture, and it was under his direction they were taken out; when witness got the stock out of the pasture he got what he thought belonged to Hudman; Hudman had the pasture leased and had the right to get his stock when he wanted them, and that Reed would take out all the other stock which did not belong to Hudman.

W. P. Rooney testified: Is sheriff of Pecos county; had occasion to talk to Hudman in regard to the Huelster horse and mules; went with Hudman to see Huelster about them; Hudman told Huelster that if he thought the mule was his he would return it to him, and, if the horse was the same he had turned loose at Monahans, he would get it and the other mule and return it, but it seems he did not know where the other mule was, but Hudman said to Huelster that he had plenty of mules and would give him mules until he was satisfied; told him to get one there on a farm a Mexican had which belonged to him.

Hudman testified: Is a road contractor; he did take out some mules from the pasture leased from Reed for his mules and stock; could not find Reed or Davis and "went there and gathered the stock taking only such stock as I believe was mine." Drove this stock to his Pyote camp; did not know the mule in question was not his mule until Mr. Rooney phoned him that Huelster was claiming it, believed up to that time the mule belonged to him. Went to see Huelster and stated to him, substantially as testified by Sheriff Rooney; never gave any one any permission to get the mule and horse Huelster claims were his at the Monahans camp; it was his intention when he took these mules out of the pasture to take only the stock that belonged to him; is still short some mules; there is one here at a Mexicans; had plenty of stock for his work, something like 170 or 180 head; did not know that Huelster owned any land in that pasture, and it was his understanding that all stock other than his would be removed from this pasture; was not present when the other mule and horse were taken, and they were not taken at his direction.

Emmett Eager testified: The mule which was at the Pyote Camp, and which he worked, he believes to be Hudman's; had charge of Hudman's stock, had worked them, and believes this mule belongs to him; was not present when the stock were taken from the pasture; has never seen the other mule or horse.

Subdivision 9, of Article 1995, of our venue statute is one of the exceptions to the article providing that no person who is an inhabitant of this state shall be sued out of the county in which he has his domicile. It reads:

"9. *Crime or Trespass.*—A suit based upon a crime, offense, or trespass may be brought in the county where such crime, offense, or trespass was committed, or in the county where the defendant has his domicile."

Appellee submits that the evidence heard on the plea shows that a trespass, within the meaning of the statute, was committed in Pecos county.

The result of this appeal depends mainly upon the meaning to be given the term "trespass."

Hudman admits that he took one of the mules from the pasture in Pecos county, drove the mule to his camp at Monahans, and was there using it as his own. The evidence does not show that Hudman took the other mule and horse from the pasture, but Hudman denies that he did so. But, conceding that he or his agent or servant did so, for the purpose of discussing the venue, we think that a fair and reasonable inference from the evidence would be that the other mule and horse were taken at the same time, but, if not, they were taken under the same or similar circumstances.

Does such taking constitute a "trespass," as that word is used in the venue statute quoted? Here there was the overt act of the taking, and not an omission of a duty to be performed as in some of the cases we have reviewed. A few expressions used by the courts might serve to show the application made of the word "trespass" under the facts of the particular case.

In Hill v. Kimball, 76 Tex. 210, 13 S. W. 59, 60, 7 L. R. A. 618, the question of venue was raised by an exception to Hill's petition alleging Kimball's residence in a county other than where the suit was brought. The exception was sustained. The petition alleged that Hill and wife were in possession under a lease of a dwelling house belonging to Kimball; that Mrs. Hill's physical condition was such that any undue excitement would likely produce serious injury to her health, all of which Kimball knew; that Kimball came to the house, and in the yard, and in the presence of Mrs. Hill, and assaulted two negroes in a boisterous and violent manner, using profane language, and resulted in a bloody affray, and to the impairment of Mrs. Hill's health. Judge Gaines, in discussing the word trespass under the above facts, after stating the several senses in which the word is used, but as used in the venue statute, said:

It "embraces all cases where injury is done to the person or to property, and is the indirect result of wrongful force. * * * In this last sense the word would include injuries to persons or property which are the result of the negligence of the wrong-doer."

It seems clear under the facts there pleaded that Kimball knew that the Hills were in actual, physical, possession of the house and yard, to the exclusion of Kimball, knew the physical condition of Mrs. Hill, and the probable proximate result to Mrs. Hill of his wrongful act.

In Ricker v. Shoemaker, 81 Tex. 22, 16 S. W. 645, 646, Judge Gaines makes a brief reference to his opinion in the Hill v. Kimball Case. In Ricker v. Shoemaker, after quoting the verbiage of the statute, he says:

"The words, 'where the crime, offense, or trespass was committed,' indicate that the word 'trespass' was intended to embrace only actions for such injuries as result from wrongful acts willfully or negligently committed, and not those which result from a mere omission to do a duty."

In Austin v. Cameron, 83 Tex. 351, 18 S. W. 437, 438, Judge Gaines refers to Hill v. Kimball and Ricker v. Shoemaker, and says that in Ricker v. Shoemaker, "we deemed it proper to define the meaning of the word [trespass] more accurately than was done in the case first cited [Hill v. Kimball], and to qualify some expressions found in the former opinion." We make this reference only because in Ricker v. Shoemaker it is said the wrongful act to be a trespass must be "willfully or negligently committed."

It will be noted in the present case that the act of taking of the animals from the pasture is alleged to be wrongful. The petition does not allege the taking to have been an act of negligence, nor does the petition allege or the evidence show the taking to have been intentionally or willfully done, but rather an act suggesting more an unintentional act or taking rather than a wrongful act of "trespass," under subdivision 9 of article 1995, of the statute.

From the definitions of the word "trespass" in the venue statute, given by our Supreme Court, as above, to maintain the venue in Pecos county, the taking of the animal or animals from the pasture in Pecos county must have been willfully, intentionally, or negligently done, which, in our opinion, is not made to appear by the evidence. In addition to the cases above, see Crespi v. Wigley (Civ. App.) 18 S.W.(2d) 716, by Judge Barcus of the Waco court, and cases there referred to.

The case is reversed and remanded, with the direction that the case be transferred to the county court of Brewster county for trial on the merits.

HIGGINS, J., did not sit in this case.