### THORP SPRINGS CHRISTIAN COLLEGE et al. v. DABNEY et al.
#### No. 12433.

Court of Civil Appeals of Texas. Fort Worth.
Feb. 28, 1931.

See, also, McGinty v. Dabney, 37 S.W. (2d) 199.

Kenley & Kenley, of Wichita Falls, for appellants.

Estes & Estes, of Granbury, and J. M. Carter, of Ft. Worth, for appellees.

CONNER, C. J.

Appellees concur in the following statement of the nature of this case taken from appellants' brief, which we therefore adopt, to wit:

"This is an appeal from the judgment of the District Court of Hood County, Texas, made and entered on the 29th day of April, 1930, overruling the pleas of privilege of A. C. Cox, who resides in Kaufman County, Texas, and Thorp Springs Christian College, which has its residence in Kaufman County, Texas.

"This suit was originally filed by T. A. Davidson, Bob B. Covey, T. H. Dabney and E. M. Dabney, residents of Hood County, Texas, on January 15, 1929, against Thorp Springs Christian College, an educational institution, incorporated under the laws of the state of Texas, with its office and place of business at Thorp Springs, in Hood County, Texas, under the terms of its charter, and having as its president U. R. Forrest, who now resides in Kaufman County, Texas, P. E. Payne, president of its Board of Trustees, who resides in Erath County, Texas, and A. C. Cox, business manager of said college, who resides in Kaufman County, Texas. Said petition charges:

"1. That the Thorp Springs Christian College is an educational institution and incorporated for such purpose under the laws of the State of Texas.

"2. That under and by the terms of said charter, the Thorp Springs Christian College and its business shall be located and maintained in the town of Thorp Springs, Hood County, Texas.

"3. That on or about the 16th day of May, 1918, the college was badly in debt and was thinking of moving its place of residence from Thorp Springs, in Hood County, Texas, to some other county, and that the trustees of said college at said time made an agreement with the citizens of Thorp Springs and Hood County, Texas, and if said citizens would pay the indebtedness of said college, said college would permanently remain at Thorp Springs, in Hood County, Texas.

"4. That in pursuance of said agreement, the citizens of Thorp Springs and Hood County, Texas paid $7,300.00 on the indebtedness of said college.

"5. That on or about the 11th day of January, 1928, the said college was again in debt, and the Board of Trustees was again considering the removal of said college from the said town of Thorp Springs to some other location, and the trustees then made another agreement with the citizens of Thorp Springs and Hood County, Texas, that if they would pay $3,000.00 on the indebtedness of said college, said college would remain permanently at Thorp Springs, Texas; that in pursuance of said agreement, the said citizens of Thorp Springs and Hood County, Texas, paid the said sum of $3,000.00.

"6. That during the year of 1928, one U. R. Forrest, the president of said college at that time, acting by himself, and others acting under his authority, moved from Hood County, Texas to Kaufman County, Texas, portions of the personal property belonging to said college.

"7. That the defendants herein, acting by themselves and in connection with other par-

ties, are now threatening and making preparations to tear down and remove the buildings belonging to said college and located in the town of Thorp Springs and to sell to private individuals all of the property belonging to said college.

"8. That this suit is instituted and prosecuted for the use and benefit of the plaintiffs herein, as well as for the use and benefit of the other property owners of said town; that many citizens of said town and county subscribed to the funds hereinbefore mentioned, and their names are too numerous to incorporate in this petition.

'9. That the citizens of the town of Thorp Springs, and especially those who made subscription for the payment of said indebtedness, purchased and owned property in said town on account of the location of said college therein, which gave to their property a distinct and certain value that did not exist for any other reason but that said college was located in said town of Thorp Springs.

"10. That the removal of the property belonging to said college impaired and practically destroyed the value of the property belonging to the citizens of said town, and would inflict on them an irreparable injury, and such injury to all their property; that the said citizens were property owning taxpayers of said county.

"11. That the acts and conduct of the defendants herein in removing said property are all in violation of the terms of the charter of said college, in violation of the terms of their agreements, as herein alleged, and in violation of the laws of the State of Texas.

"12. That unless the said defendants, their agents, servants and employees are restrained from the further removal and destruction of the property belonging to said college, as well as the sale of said property, such acts and conduct will result in the serious loss and injury of property belonging to the said citizens of the town of Thorp Springs and Hood County and in the destruction of the value thereof.

"13. They further show to the court that they have not now any adequate legal remedy to prevent the injury to the value of their said property, and have no other means of preventing such injury except by the equitable remedy of injunction.

"The plaintiffs pray for citation, for writ of injunction, and, in the alternative, for judgment for the various sums of money heretofore paid out, as herein alleged.

"Judge Sam M. Russell, Judge of the 29th Judicial District, in vacation, authorized the issuance of a writ of injunction, as prayed for by the plaintiffs.

"On April 29, 1929, which was the appearance day of the next term of court after said suit was filed, the defendant, Thorp Springs Christian College, acting by and through its then president, J. B. McGinty, filed in said cause its plea of privilege, asking that said cause be transferred to Kaufman County, Texas, the residence of said defendant.

"On April 29, 1929, which was the appearance day of the next term of court after said suit was filed, the defendant, A. C. Cox, filed in said cause, his plea of privilege, asking that said cause be transferred to Kaufman County, Texas, the place of his residence.

"On May 4, 1929, the plaintiffs filed in said cause their controverting affidavit, in answer to the pleas of privilege of the defendants, A. C. Cox and Thorp Springs Christian College.

"The hearing on said cause was continued by the court from time to time until the 29th day of April, 1930, at which time the court, after hearing the evidence and argument of counsel in said cause, overruled the pleas of privilege of the defendants and refused to transfer said cause from the District Court of Hood County, Texas.

"The defendants then and there excepted to the action of the court in overruling their respective pleas of privilege and gave notice of appeal to the Court of Civil Appeals for the Second Supreme Judicial District of Texas, sitting at Fort Worth, Texas.

"Thereafter, the defendants perfected their appeal by filing in said court on June 9, 1930, their appeal bond, and which was duly approved by the Clerk of said court.

"This case is now before this court on appeal from the judgment of the District Court of Hood County, Texas, in overruling the pleas of privilege of the defendants, Thorp Springs Christian College and A. C. Cox."

Appellants' first proposition reads as follows: "The plaintiffs' pleadings on file in this cause fail to show that the plaintiffs therein had any cause of action against defendants named therein."

Appellants' propositions 2, 6, 7, 8, and 11 in different forms substantially involve the question presented under proposition 1. In support of the propositions, appellants set forth the material allegations of plaintiffs' petition, which, for reasons assigned, it is insisted "do not show the plaintiffs themselves had any real cause of action against the defendants or any of them." These propositions evidently are in the nature of general and special exceptions to the sufficiency of the petition upon which plaintiffs based their suit. The record fails to show that the defendants, or any of them, questioned the capacity of plaintiffs to sue by any verified plea as provided by the statutes. The record also fails to show that the court below was called upon to rule on the demurrers or exceptions, nor is there an order

or judgment so showing. The issues involved in the merits of the case are entirely distinct from those in a hearing on a plea of privilege. Our jurisdiction is, except where otherwise specially provided, appellate only, and, had the court below heard the exceptions and sustained them, then the plaintiffs had the right to amend and thus have avoided the objections. In event of a failure or refusal to amend, the court would have dismissed the suit, and our jurisdiction could be called upon to review the ruling, and the jurisdiction of the Supreme Court could have been called upon to review the conclusion of this court.

The right to the procedure above indicated ought not and could not, we think, be cut off by rulings of this court on this appeal. It has been distinctly held that the Supreme Court is without jurisdiction to review orders sustaining or overruling pleas of personal privilege to be sued in the county of one's residence. See Magouirk v. Williams (Tex. Com. App.) 249 S. W. 185; Vaught v. Jones (Tex. Com. App.) 20 S.W.(2d) 758. There is a further ruling of our Supreme Court that the defendant who seeks action of the trial court on demurrers and exceptions to the plaintiff's pleadings thereby waives his plea of privilege. Martin v. Kieschnick (Tex. Com. App.) 231 S. W. 330. The effect of urging demurrers for the first time on appeal from an order overruling a plea of privilege has not yet been determined, in so far as we are advised, and we do not find it necessary to now determine it.

In the case of Shear Co. v. Neely, 214 S. W. 573, 574, this court had occasion to consider the character of defendant's plea of privilege and the answering controverting affidavit of plaintiff as affected by our statutes. After citing the article of the statute relating to the plea of privilege and other articles which we need not here repeat, we said: "As it seems to us, a consideration of these articles referred to brings the plea of privilege and the plaintiff's controverting affidavit thereto within the rules that ordinarily apply to pleadings. As noted, the plea of privilege is not only designated as a pleading, but it is particularly provided that the controverting affidavit, before a hearing is authorized, shall be served upon the defendant or his attorney at least ten full days exclusive of the day of service and of hearing, thus evincing the legislative intent that a defendant presenting a plea of privilege should be fully informed by the plaintiff's controverting affidavit, if any, of what he will be called upon to meet. If so, the hearing of the plea of privilege, as in case of a trial upon other issues, should be confined to the allegations of the plea of privilege and to the averments of the controverting affidavit in accordance with the familar rule that

the allegata and the probata must correspond."

We adhere to the views so expressed, and now apply them to the pleas of privilege and controverting affidavit before us.

The pleas of defendants are substantially the same in form. That of the defendant college, omitting formal parts, alleges that it was duly incorporated on the "13th day of September, 1928," which said charter provides in paragraph III thereof as follows: "The location of this corporation and its principal office shall be in the County of Kaufman, and in or near the town of Terrell, State of Texas."

It is further alleged that at all times it was not "a resident of the County of Hood, the county in which this suit was instituted and is now pending, but is now and was at the time of the institution of this suit and at the time of the service of process on it, and of the execution and filing of this plea, a resident of the county of Kaufman, State of Texas, where it has during all of the said times and now, had and has its principal office and place of business, and where it then and now resides, and that no exception to exclusive venue in the county of one's residence provided by law exists in said cause; that this suit does not come within any of the exceptions provided by law in such cases authorizing this suit to be brought or maintained in the county of Hood, State of Texas, or elsewhere outside of the said county of Kaufman."

The plea of defendant Cox, omitting formal parts, reads: "This court ought not to have or take further action or cognizance of this suit than to have the same transferred to the court having jurisdiction of the person of this defendant, because he says that he is not now and was not at the institution of this suit, nor at the time of the service of such process on him herein, nor at the time of filing this plea, a resident of the county of Hood, the county in which this suit was instituted and is now pending but is now and was at the time of the institution of this suit and at the time of the service of process on him, and of the execution and filing of this plea, a resident of the county of Kaufman, State of Texas, where he then and now resides, and that no exception to exclusive venue in the county of one's residence provided by law exists in said cause; that this suit does not come within any of the exceptions provided by law in such cases authorizing this suit to be brought or maintained in the county of Hood, state of Texas, or elsewhere outside of the said county of Kaufman."

The controverting affidavit of plaintiffs alleges, in substance, that the Thorp Springs College was an educational institution, duly

incorporated; that by the terms of its charter it was to be maintained and operated in the town of Thorp Springs, Hood county, Tex.; that about the 16th day of May, 1918, it became heavily in debt; that the college was unable to pay such indebtedness, which was thereupon subscribed and paid by the citizens of Thorp Springs and Hood county "on condition that said college should forever remain at Thorp Springs"; that an agreement was entered into to this effect; that a similar condition of indebtedness on the part of the college existed on or about January 11, 1928, and there was talk of its removal, whereupon said citizens again subscribed and paid the indebtedness, and the college again agreed to maintain the college at Thorp Springs "permanently."

The controverting affidavit further alleged that about the month of August, 1928, the defendants entered on the property and removed all of the personal property of the college consisting of the library, laboratory, furniture, pianos, student desks, typewriter, household and kitchen furniture, etc., of the approximate value of $10,000. The controverting affidavit further charged that the defendants Payne and Cox had effected a transfer to several parcels of land, and that the conversions and transfers had been made without authority, and all done and performed in Hood county, and that the court had jurisdiction over the defendants by virtue of subdivision 9 of article 1995, Rev. Civ. Statutes of 1925, which will hereinafter be quoted. To this we add that in the petition of the plaintiffs it was also alleged that the defendants were threatening to tear down the college building, to prevent which the court had issued a temporary writ of injunction, from which, however, no appeal has been taken so far as appears in the record.

The defendants made no reply by demurrer or otherwise to the controverting affidavit, and the court proceeded to try the issues presented by the pleas and affidavit of plaintiffs. After hearing the evidence, the court overruled the pleas of privilege and defendants have appealed, as stated in the beginning of this opinion.

As shown in the evidence before us, the college had been chartered, operated, and maintained for many years in Thorp Springs, Hood county, as alleged in plaintiffs' controverting affidavit, and that the charter under which the defendants claim purports to be an "original" one, fixing Kaufman county as the place of the college's residence and operation. It purports to have been filed by J. B. McGinty, U. R. Forrest, and M. H. Moore; the reasons or authority for the change from the old to the new location not appearing. It does, however, appear in the evidence that the old college indebtedness existed and was paid and the agreements based thereon made and

entered into substantially as the plaintiffs allege in their controverting affidavit. It further appears that the defendants, as alleged, caused the seizure of some thirteen truck loads of the old college furniture and removed the same from Thorp Springs to Kaufman county, near the town of Terrell.

In this connection the writer ventures to add that he was a patron of the college at Thorp Springs during the administration of those eminent Christian gentlemen and educators, Addison and Randolph Clark. They conducted a high-class educational institution, where many youths of the time and section received higher education, and from which they went forth well equipped, morally, mentally, and physically, to enter into life's activities. Of the many who thus went forth the writer recalls the name of the Honorable Nathan K. Tracy, the present Eminent Grand Commander of the Knight Templars of Texas. However, we do not want to be understood as questioning the legal status of the defendant corporation, but, if its charter is an "original" one, as it purports to be, it is not quite clear to us, in the absence of explanation, how the new corporation can legally adopt the name of the old and appropriate its property without assuming its obligations.

Aside from the foregoing interpolation, however, and from defendants' exceptions and demurrers mentioned in the earlier part of our discussion, we note that appellants' remaining propositions, in substance, only present the following contentions: (1) That, by virtue of an amendment to the charter of the old college, its location was changed from Thorp Springs, Hood county, to Cleburne, Johnson county. But we attach no importance to this fact, for it does not appear that the amendment was ever acted upon by any actual removal or discontinuance of college operations from Thorp Springs. We infer from the evidence before us that it was to defeat the removal indicated by the amendment that the plaintiff citizens subscribed and paid the indebtedness existing against the college in January, 1928. (2) It is further contended, in effect, that the acts complained of do not amount to such intentional and willful wrongs as to bring the case within the operation of subdivision 9 of article 1995, giving a defendant the right to be sued in the county of one's residence, especially since, as alleged, such acts were done by named officers of the defendant corporation without allegation or proof that such officers were authorized to so act by the trustees of the corporation citing Hudman v. Huelster (Tex. Civ. App.) 29 S.W.(2d) 454; Cook v. Guzman (Tex. Civ. App.) 19 S.W.(2d) 855; Lawless v. Tidwell (Tex. Civ. App.) 24 S.W.(2d) 515.

Article 1995, Rev. Civ. Statutes of 1925, reads:

"No person who is an inhabitant of this State shall be sued out of the county in which he has his domicile except in the following cases: * * *

"9. A suit based upon a crime, offense, or trespass may be brought in the county where such crime, offense, or trespass was committed, or in the county where the defendant has his domicile."

We are of the opinion that there is no merit in the contention last above stated. The cases cited in support thereof are apparently distinguishable from the one before us. The case first cited (Hudman v. Huelster) was one where the defendant had unintentionally taken one of plaintiff's animals, together with some of his own, out of a pasture where the animals were inclosed. Cook v. Guzman was a case of an automobile collision resulting from an act of mere negligence; so, too, the case of Lawless v. Tidwell was one in which the defendant driving an automobile negligently collided with another. In these cases it was merely held that the wrongful act or acts relied upon as bringing the case within subdivision 9, some wrongful act must have been committed and not merely a tort resulting from a negligent omission to perform a duty; that is, a wrongful act must be active as distinguished from passive.

In the case of Vaught v. Jones, 8 S.W.(2d) 800, this court had occasion to determine the character of the wrong bringing the case within subdivision 9, and held that the automobile collision involved fell within the operation of subdivision 9. The decision was reviewed by section B of the Commission of Appeals as reported in 17 S.W.(2d) 779, 780, where it was said: "We think the opinion of the Court of Civil Appeals has reached the right conclusion; it properly appraises the decisions reviewed. The final test appears to be that, in order to constitute a 'trespass' through negligence, the act must be an affirmative one rather than a mere omission to perform a duty. The plaintiff's petition meets this test. Nothing needs to be added to what Justice Buck has so well written."

While that opinion was later withdrawn, as will be seen by reference to the case of Vaught v. Jones (Tex. Com. App.) 20 S.W.(2d) 758, on the ground that the Supreme Court was without jurisdiction of appeals from orders overruling or sustaining pleas of privilege, yet the expression of the Commission of Appeals is not only persuasive, but in accord with the authorities. The evidence in this case, however, shows that the acts of defendants as performed were consciously and intentionally done, and in the case of Hall v. Saunders (Tex. Civ. App.) 15 S.W.(2d) 717, it was said: "It is now generally held that the unlawful conversion of personal property is a trespass within the meaning of subdivision 9 of article 1995 of the present Revised Civil Statutes," citing cases.

To the same effect is the holding in the case of Bowers v. Bryant-Link Co., 15 S.W.(2d) 598, 599. The opinion is by Section A of the Commission of Appeals, and involved the conversion of some rent property by a tenant. Judge Harvey, for the court, said: "The trespass, as regards a portion of the converted cotton, is shown to have been committed in Dickens county. Hence suit against both trespassers, in respect of such trespass, was properly brought there. R. S. art. 1995, subd. 9. * * * And, too, venue in the suit against the trespassers, Bowers and Collins, for the conversion of all the cotton converted by them, lies in Dickens county, where some of the cotton was converted. All the acts of conversion were committed in pursuance of a general plan concerted by them; which plan comprehended the conversion of all the rent cotton raised by Collins. For this reason, if for no other, suit against them for the conversion of all may be brought in any county where any of the particular trespasses committed in pursuance of the general plan occurred."

There is a further contention that the plea should have been sustained on the ground that the plaintiffs failed to allege that they had first applied to the defendant corporation itself for relief. Not only does the contention fall within the purview of a demurrer, and therefore not available here for reasons already stated, but it is also well established that, where corporate action cannot be expected, and the corporation is controlled by the very persons whose conduct is complained of, application to it need not be made for relief. See Texas Jurisprudence, vol. 1, p. 786, and cases cited in note 8 to the text. See, also, Becker v. Ry. & Real Estate Co., 80 Tex. 478, 15 S. W. 1094.

We finally conclude that all assignments and propositions of error should be overruled, and the judgment below affirmed.